UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**UNITED STATES OF AMERICA,**

           v.

**WILLIAM GREEN,**

           Defendant.

Criminal No. 19-525

Hon. Kevin McNulty, U.S.D.J.

---

## DEFENDANT WILLIAM GREEN'S MEMORANDUM
## OF LAW IN SUPPORT OF PRETRIAL MOTIONS

---

**Jardim, Meisner & Susser, P.C.**
30B Vreeland Road, Suite 100
Florham Park, New Jersey 07932
(973) 845-7648
mgilberti@jmslawyers.com
Attorneys for Defendant William Green

On the Memorandum:

Michael V. Gilberti, Esq.
N.J. ID. No. 02301981

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ........................................................................2

DISCUSSION .........................................................................................4

I.     .BECAUSE THE LEGISLATURE DID NOT PROVIDE A
       DEFINITION INCLUDING VIRTUAL CURRENCY OR
       BITCOIN AS MONEY, THE INDICTMENT DOES NOT
       STATE AN OFFENSE, AND THE COURT SHOULD
       DISMISS IT.......................................................................4

       A.     The Applicable Statutes Do Not Define Virtual
              Currency as "Money".......................... .....4

       B.     Separation of Powers and Due Process Prevent
              Courts and Prosecutors from Supplying a Definition
              Where Congress Did Not.................................. ....8

       C.     Section 1960 Does Not Apply to Mr. Green's Case.........9.

       D.     The Rule of Lenity Weighs in Favor of Dismissing
              the Indictment................................... .................10.

CONCLUSION ................................................................12

## TABLE OF AUTHORITIES

**Cases**

*Gov't of V.I. v. Greenridge*, 600 F.2d 437 (3d Cir. 1979) …… … ……………….5-6

*Hamling v. United States*, 418 U.S. 87 (1974) …………………………………….5

*Liparota v. United States*, 471 U.S. 419 (1985) …………………………………….10

*Ocasio v. United States*, 578 U.S.____, 136 S. Ct. 1423 (2016) ……………………10

*United States v. 50.44 Bitcoin*, 2016 U.S. Dist. LEXIS 70404 (May 31, 2016)…………………………………………………………….9

*United States v. Bass*, 404 U.S. 336 (1971) …………………………………….10

*United States v. Bergrin*, 650 F.3d 257 (3d Cir. 2011). …………………………….5

*United States v. Davis*, 588 U.S.____(Slip. Op. June 24, 2019) …… ……….1, 8-10

*United States v. DeLaurentis*, 230 F.3d 659 (3d Cir. 2000) …………………………12

*United States v. Faiella*, 39 F. Supp. 3d 544 (S.D.N.Y. 2014) …………………….5

*United States v. Lord*, U.S. Dist. LEXIS 60508 *10 (April 20, 2017).. ……………9

*United States v. Murgio*, 209 F. Supp. 3d 698 (S.D.N.Y. 2016) ……………………9

*United States v. Panarella*, 277 F.3d 678 (3d Cir. 2002). …………………………….5

*United States v. Resendiz-Ponce*, 549 U.S. 102 (2007) …………………………….5

*United States v. Sampson*, 371 U.S. 75 (1962) …………………………………….4

*United States v. Schiff*, 602 F.3d 152 (3d Cir. 2010) …………………………………….5

*United States v. Stetkiw*, (E.D. Mich., February 1, 2019)…………………………….5

*Yates v. United States*, 574 U.S.____, 135 S. Ct. 1074 (2015) …………………….10

**Statutes and Rules**

18 U.S.C. § 1960…………………………………………………………….1,2,6,9,10

31 U.S.C. § 5330………………………………………………………………….6,7,9

31 C.F.R. 1010.100(ff)(5)(9i)(A) ................................................................9

31 C.F.R. 1010.100(m) ................................................................6

***Fed. R. Crim. P.*** 7 (c) ................................................................4

***Fed. R. Crim. P.*** 12(b)(3)(B)(v) ................................................................1,3,5

***N.J.S.A.*** 17:15C-2 ................................................................6

## PRELIMINARY STATEMENT

Before the United States Supreme Court's recent decision in **United States v. Davis**, 588 U.S.___ (2019),[1] several district courts had wrestled with the problem of whether virtual currency or cryptocurrency, like Bitcoin, was "money" for purposes of 18 U.S.C. § 1960 – which makes it illegal to operate an "unlicensed money transmitting business." The statute does not define "money" and does not mention virtual currency. But in previous prosecutions under this statute, some courts looked to the Department of the Treasury Financial Crimes Enforcement Network ("FINCEN") for guidance, and others pulled out the dictionary for definitions to divine the "plain meaning" of the law.

However, in **Davis** – albeit interpreting a different statute, the Court made clear that, under the separation of powers in the United States Constitution, the Legislature – not the courts and not the prosecution – has the exclusive power to make an act criminal. The Court also held that, to be enforceable under the Due Process clause, a criminal statute must give "fair notice" to "ordinary people" of what acts are being punished.

The indictment here charges defendant William Green with one count of operating an illegal unlicensed money transmitting business for sales of Bitcoin to customers. He has moved to dismiss, under **Fed. R. Crim. P.** 12 and **Davis**, asserting that the indictment does not state a criminal offense because the statute does not expressly include Bitcoin as money and there is no legal basis for charging that he operated an unlicensed money transmitting business by conducting Bitcoin transactions. The Court should grant this motion.

_____

[1] The Slip Opinion, dated June 24, 2019, is Exhibit B to the Declaration of Michael V. Gilberti.

## STATEMENT OF FACTS

The government has charged Mr. Green with one count of "Operating an Unlicensed Money Transmitting Business" in violation of 18 U.S.C. § 1960.  [Gilberti Dcl. Ex. A]  The indictment is brief.  It states:

1.   At all times relevant to this Indictment:

a.   Defendant WILLIAM GREEN was a resident of the State of New Jersey and maintained a website business under the name "Destination Bitcoin."  Through the Destination Bitcoin website, defendant GREEN operated a business wherein he received money from members of the public ("the customers"), deposited such money into Bitcoin in accordance with the customers' instructions.  Defendant GREEN charged the customers a fee for this service.

b.   Federal law provided that "[a]ny person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury. . ." 31 U.S.C. § 5330(a)(1).

c.   Defendant GREEN did not register, either in his own name or in the name of his business, with the Secretary of the United States Treasury as a money transmitting business.

2.   From in or around August 2017 through in or around February 2019, in the District of New Jersey and elsewhere, the defendant

### WILLIAM GREEN

did knowingly conduct, control, manage, supervise, direct, and own all or part of an unlicensed money transmitting business, specifically, a Bitcoin exchange service, which affected interstate and foreign commerce and failed to comply with the money transmitting business registration requirements set forth in Title 31, United States Code, Section 5330 and regulations prescribed under that Section.

In violation of Title 18, United States Code, Section 1960.

Significantly, like the statutes and their legislative histories, the indictment does not define "money."  And it does not allege that Bitcoin is money.  It simply assumes it is.

Mr. Green has pled not guilty to this charge and has moved to dismiss the indictment because it is defective and based on the rule of lenity.

2

## DISCUSSION

### I.   BECAUSE THE LEGISLATURE DID NOT PROVIDE A DEFINITION INCLUDING VIRTUAL CURRENCY OR BITCOIN AS "MONEY," THE INDICTMENT DOES NOT <u>STATE AN OFFENSE, AND THE COURT SHOULD DISMISS IT.</u>

Mr. Green has moved to dismiss the indictment on two constitutional grounds. First, under the "separation of powers" clause of the U.S. Constitution, only the Legislature – not the Judicial Branch or the Executive Branch – has the power to criminalize conduct. Second, under "due process," the legislation must inform "ordinary people" what is criminal conduct.

Here the Legislature has not informed the public that virtual currency, like Bitcoin, is "money" or that failing to register a business conducting transactions in it will be punished. As a result, Mr. Green's transactions were not illegal. At the very least, the rule of lenity requires dismissal.

#### A.  The Applicable Statutes Do Not Define Virtual Currency as "Money."

Mr. Green has moved to dismiss the indictment under *Fed. R. Crim. P.* 12(b)(3)(B)(v). The Rule states that: "The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits . . . a defect in the indictment or information, including . . . failure to state an offense." An indictment that fails to state an offense is defective, and the Court must dismiss it. *Id.* See *United States v. Sampson*, 371 U.S. 75, 78-79 (1962)("Of course, none of these charges have been established by evidence, but at this stage of the proceedings the indictment must be tested by its sufficiency to charge an offense").

An indictment must provide a "definite written statement of the essential facts constituting the offense charged." *Fed. R. Crim. P.* 7 (c). To be sufficient, an indictment must satisfy three

3

criteria:

    (1) It must contain all of the elements of the crime charged;

    (2) It must fairly inform the accused of the charges so he may prepare a defense; and

    (3) It must enable the defendant to plead the judgment as a bar to any future prosecution for the same offense. ***Hamling v. United States***, 418 U.S. 87, 117 (1974). *See* **United *States v. Resendiz-Ponce***, 549 U.S. 102, 108 (2007).

    "The court is limited, however, in what it may consider during this analysis. Its determination must be based on whether the facts alleged in the indictment, if accepted as entirely true, state the elements of an offense and could result in a guilty verdict. [***United States v. DeLaurentis***, 230 F.3d 659, 660-61 (3d Cir. 2000)]("[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence . . . [***Fed. R. Crim. P.*** 12(b)(3)(B)] authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges.') . . . Generally speaking, it is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury." ***United States v. Bergrin***, 650 F.3d 257, 268 (3d Cir. 2011).

    "A district court must find that 'a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.' [***United States v. Panarella***, 277 F.3d 678, 685 (3d Cir. 2002)]; *see also* ***United States v. Schiff***, 602 F.3d 152, 162-66 (3d Cir. 2010)(indictment alleging 'failure to rectify misstatements of others' does not, as a matter of law, state an offense under securities statute that criminalizes omissions of information); ***Gov't of the V.I. v. Greenridge***, 600 F.2d 437, 438-40 (3d Cir. 1979)(indictment alleging

4

assault on male companion of a rape victim does not, as a matter of law, state an offense under a statute that criminalizes assaulting a rape victim)." *Id.* at 264-65.

In this case, the indictment charges that Mr. Green violated 18 U.S.C. § 1960 by operating an unlicensed money transmitting business.  Section 1960(a) states:

> (a) Whoever knowingly conducts, controls, manages, supervises, directs or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years or both."

Section 1960(b) states that: "As used in this section –

(1) the term 'unlicensed **money** transmitting business' means a **money** transmitting business which affects interstate or foreign commerce in any manner or degree and –

> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;[2] [or]

> (B) fails to comply with the **money transmitting business** registration requirements under **section 5330 of title 31**, United States code, or regulations prescribed under such section; or

> (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;[3]

(2) the term '**money transmitting**' includes transferring **funds** on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier . . . ." (Emphasis added)

---

[2] New Jersey requires registration of "money transmitting businesses." *N.J.S.A.* 17:15C-2. Under its law, "'Money' means a medium of exchange **authorized or adopted by the United States or a foreign government as a part of its currency** and that is customarily used and **accepted as a medium of exchange in the country of issuance**." (Emphasis added)  This definition is remarkably similar to the federal definition of "currency" in 31 C.F.R. § 1010.100(m). Further, it clearly excludes virtual currency. As a result, **Mr. Green's business was perfectly legal,** and the government did not and could not proceed under subsection (1)(A).

[3] Because, unlike most other prosecutions under this statute, there is no allegation here that Mr. Green's transactions involved proceeds from other unlawful conduct, subsection (1)(C) does not apply.

Significantly, this statute does not contain a definition of "money" or "funds" or any mention of virtual currency, cryptocurrency or Bitcoin. Examining "the statute's text, context, and history," there is "no reliable way to determine" that Congress meant to include virtual currency as money under this statute. Congress enacted it in 1992 and amended it in 1994 and again in 2006 – well before virtual currency or Bitcoin came into existence in 2008 or gained any significant level of acceptance. Consequently, it cannot be argued that Congress meant to include virtual currency in the statute. More importantly, Congress has not amended the statute since.

Section 5330 of Title 31 is essentially a civil provision that provides civil penalties and permits the Treasury Department to promulgate related administrative regulations. Section 5330(d) provides "definitions" "for purposes of **this** section." It states that:

> (1) **Money Transmitting Business**. The term "**money** transmitting business" means any business other that the United States Postal Service which –
>
> (A) Provides check cashing, currency exchange, or **money** transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of **funds**, including any person who engages as a business in an informal **money** transfer system or any network of people who engage as a business in facilitating the transfer of **money** domestically or international outside of the conventional financial institutions system . . . . (Emphasis added)

Similarly, this statute does not define "money" or "funds" or mention virtual currency or Bitcoin. Congress enacted it in 1994 and amended it in 2001 – once again, before the emergence of virtual currency or Bitcoin. And since then, Congress has not amended this Act.

Clearly, Congress has not said that Bitcoin is money and has not told ordinary people that selling it is illegal. As a result, the conduct charged is "beyond the scope of the relevant statute." The indictment is defective and does not state an offense.

### B.  Separation of Powers and Due Process Prevent Courts and Prosecutors from Supplying a Definition Where Congress Did Not.

Recently, in ***United States v. Davis***, 588 U.S.____ (2019)[Gilberti Dcl. Ex. B], the United States Supreme Court struck down the "residual clause" of 18 U.S.C. § 924(c) because it "provides no reliable way to determine which offenses qualify as crimes of violence and thus is unconstitutionally vague." Slip Op. at 2.  In its opening passage, the Court stated:

> In our constitutional order, a vague law is no law at all.  **Only the people's elected representatives in Congress have the power to write new federal criminal laws**.  And when Congress exercises that power, it has to write statutes **that give ordinary people fair warning about what the law demands of them**.  (Emphasis added)

Slip Op. at 1.

The Court continued, saying:

> Vague laws **transgress both of these constitutional requirements**.  They hand off the **legislature's responsibility for defining criminal behavior** to unelected prosecutors and judges, and they **leave people with no sure way to know what consequences will be attached to their conduct**.  When Congress passes a vague law, the role of courts under our Constitution is not to fashion a new, clearer law, **but to treat the law as a nullity** and invite Congress to try again.  (Emphasis added) ***Id***.

Later, the Court remarked:

> Our doctrine prohibiting the enforcement of vague laws rests on the **twin constitutional pillars of due process and separation of powers** . . .Vague laws contravene the "first essential of due process of law" that statutes **must give people "of common intelligence" fair notice** of what the law demands of them . . . Vague laws also undermine the Constitution's **separation of powers** and the democratic self-governance it aims to protect.  **Only the people's elected representatives in the legislature are authorized to "make an act a crime."** . . . Vague statutes threaten to hand responsibility for defining crimes to **relatively unaccountable** police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide.  (Emphasis added) (Citations omitted)

Slip Op. at 4-5.

Finally, the Court commented: "Respect for due process and the separation of powers suggests a court may not, in order to save Congress the trouble of having to write a new law,

construe a criminal statute to penalize conduct it does not clearly proscribe." Slip Op. at 18-19.

Under **Davis**, Congress may not delegate its power to make an act criminal. In addition, if the words that Congress actually wrote are ambiguous or do not cover an area, neither the courts nor the prosecution have the power to plug the hole or correct the problem. Only Congress does.

### C. Section 1960 Does Not Apply to Mr. Green's Case.

For purposes of this prosecution, there is a hole in section 1960: it does not define virtual currency as money. In cases predating **Davis**, district courts (the Judicial Branch) and prosecutors (the Executive Branch) attempted to plug this hole several ways. For example, in **United States v. Faiella**, 39 F. Supp. 3d 544 (S.D.N.Y. 2014), the district court used a dictionary definition from Miriam-Webster to hold that Bitcoin was money for purposes of a prosecution under 18 U.S.C. § 1960. Similarly, in **United States v. Murgio**, 209 F. Supp. 3d 698 (S.D.N.Y. 2016), the district court relied on the "plain meaning" of the word funds and the FINCEN Guidance, FIN-2013-G001, to reach the same result. The court rejected contrary defense citations to **Black's Law Dictionary**. In **United States v. Lord**, U.S. Dist. LEXIS 60508 *10 (April 20, 2017), the district court used an administrative regulation, 31 C.F.R. § 1010.100(ff)(5)(9i)(A), and FINCEN's Guidance to conclude that virtual currency was money under 18 U.S.C. § 1960. Finally, in **United States v. Stetkiw**, (E.D. Mich. February 1, 2019), the district court also relied on FINCEN's Guidance for its holding that virtual currency was money under 18 U.S.C. § 1960.[4]

In each case, the "judge's estimation" produced the result. All of those courts started from

---

[4] Because these constitutional principles control criminal statutes and not civil statutes, holdings in civil and administrate cases under 31 U.S.C. § 5330 and its regulations do not apply here. *See* **United States v. 50.44 Bitcoin**, 2016 U.S. Dist. LEXIS 70404 (May 31, 2016).

the shaky assumption that the law was constitutional because Congress must have intended to criminalize transactions in virtual currency and then supplied a definition to prop up that assumption. But as stated in **Davis**, the Constitution did not give those courts, the Treasury Department or federal prosecutors that power, and none of those prosecutions would survive a motion to dismiss today.

Simply put: Congress has not exercised its exclusive power to include virtual currency or Bitcoin as money, and the statute does not give people of common intelligence fair notice that transactions in Bitcoin violate 18 U.S.C. § 1960.[5]

### D. The Rule of Lenity Weighs in Favor of Dismissing the Indictment.

Finally, under the "rule of lenity," any ambiguity or hole in a criminal statute should be resolved in favor of lenity to the defendant. **Yates v. United States**, 574 U.S. ___, 135 S. Ct. 1074, 1088 (2015). The rule "[a]pplies when a criminal statute contains a 'grievous ambiguity or uncertainty,' and 'only if, after seizing everything from which aid can be derived,' the Court 'can make no more than a guess as to what Congress intended.'" **Ocasio v. United States**, 578 U.S. ___, 136 S. Ct. 1423, 1434 n. 8 (2016). This principle of statutory construction ensures that people are fairly warned about what conduct may expose them to criminal penalties. **United States v. Bass**, 404 U.S. 336, 348 (1971); **Liparota v. United States**, 471 U.S. 419, 427 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability").

Here Congress has not expressly stated that virtual currency is money. This omission, at

---

[5] As noted before, the main problem is that Congress enacted the law in 1992, last amended it in 2006 – before Bitcoin's emergence – and has not taken any action since despite having plenty of time to do so.

best, excludes virtual currency from the statute's reach and, at worst, makes its application to virtual currency "**grievously uncertain**."  As other district courts have shown, interpreting the statute to include virtual currency is nothing more than a guess.

      As a result, the rule of lenity also applies, and the Court should dismiss the indictment.

## CONCLUSION

The Supreme Court has spoken definitively on the exclusive power of the Legislature to create and define criminal conduct. In the case of 18 U.S.C. § 1960, the Legislature has not provided any statement making transactions in virtual currency or Bitcoin illegal. Neither the Judicial Branch nor the Executive Branch has power to change this fact. As a result, there is no statement informing people of common intelligence that those transactions are illegal. And under the rule of lenity, the Court must resolve any doubt in favor of the defendant. The Court should dismiss this indictment.

Respectfully submitted,

/s/ Michael Gilberti (MVG7172)
Michael V. Gilberti
Attorney for Defendant William Green

Dated: November 18, 2019

11