UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM GREEN,<br><br>Defendant. | Crim. No. 19-525 (KM)<br><br>**OPINION & ORDER** |

### KEVIN MCNULTY, U.S.D.J.:

Before the Court is an admirably focused motion to dismiss the indictment by defendant William Green. (DE 22, 23) Mr. Green is alleged to have operated an unregistered business wherein he assisted customers with exchanging ordinary currency into a virtual currency, Bitcoin. He is accused of operating an "unlicensed money transmitting business" in violation of 18 U.S.C. § 1960. But Bitcoin, he says, is not "money."

Mr. Green moves to dismiss the indictment under Fed. R. Crim. P. 12(b)(3)(B)(v) for failure to state an offense. Mr. Green asserts that 18 U.S.C. § 1960 does not define "money" or "funds" so as to encompass Bitcoin—or at least does not do so with sufficient clarity. (DE 23-1) Citing *United States v. Davis*, 139 S. Ct 2319 (2019), Mr. Green argues that the statute is vague in relation to a business dealing in Bitcoin, and that there is no legal basis to charge him with operating an unlicensed money transmitting business. (*Id.*)

The government opposes Mr. Green's motion, stating that the plain language of 18 U.S.C. § 1960 and its legislative history confirm that it applies broadly to include virtual currencies, including Bitcoin. (DE 25) The citation to *Davis*, says the government, does not help Mr. Green, as it does not decide any issue relevant to this case, but simply applies well-established principles of statutory construction. (*Id.*)

1

For the reasons outlined below, I will deny Mr. Green's motion to dismiss the Indictment. (DE 22, 23)

## I. The Indictment[1]

William Green, a New Jersey resident, is alleged to have operated a business using a website called "Destination Bitcoin." (DE 13 ¶ 1a) The government alleges that, from August 2017 to February 2019, Mr. Green's business converted customers' fiat money into Bitcoin.[2] (*Id.*) Mr. Green accomplished this by depositing his customers' funds into his personal bank account, converting this money into Bitcoin, and then transferring the Bitcoin back to his customers. (*Id.*) In exchange for facilitating this conversion, Mr. Green charged a fee. (*Id.*)

The Indictment recites that federal law requires anyone who owns or controls a "money transferring business" to register that business with the Secretary of the Treasury. (*Id.* ¶ 1b (citing 31 U.S.C. § 5330(a)(1))) Mr. Green, says the government, failed to register his business with the Secretary of the Treasury. (*Id.* ¶ 1c) Accordingly, Mr. Green is charged with operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960.

---

[1] Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated:

"DE" = Docket entry number in this case.

[2] Bitcoin "is a decentralized form of online currency that is maintained in an online 'wallet.' Bitcoins can be purchased from online exchangers or brokers, who often charge a fee for making such an exchange. Bitcoins can then be exchanged for other goods or services online and transferred to another person's wallet. That person can then either use such bitcoins to purchase other goods and services or convert them back to U.S. dollars or some other traditional form of currency." *United States v. Lord*, No. CR 15-00240-01/02, 2017 WL 1424806, at *1 (W.D. La. Apr. 20, 2017), *aff'd*, 915 F.3d 1009 (5th Cir. 2019).

## II.   Discussion

### a.  Legal standard

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on the merits." *United States v. Huet*, 665 F.3d 588, 594 (3d Cir. 2012) (emphasis omitted) (quotation omitted).

A sufficient indictment "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (internal citations and quotations omitted). For purposes of a motion to dismiss, the Court must accept as true all factual allegations in the indictment. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). One way a defendant can proceed with such a challenge is by claiming "that an indictment fails to state an offense on the basis that 'the specific facts alleged ... fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'" *United States v. Willis*, 844 F.3d 155, 162–63 (3d Cir. 2016).[3]

### b.  18 U.S.C. § 1960

Enacted in 1992 and amended most recently in 2006, Section 1960 provides as follows:

---

[3] Mr. Green grouses that the government's opposition (DE 25) impermissibly contains factual allegations that extend beyond the "four corners of the indictment" and refers to extrinsic evidence. (*See* DE 26 at 2 (citing *U.S. v. Huet*, 665 F.3d 588, 593 (3d Cir. 2012)). To be clear, for purposes of this motion to dismiss, I confine my analysis to those facts asserted in the indictment (DE 13).

3

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section--

> (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and--
>
>> (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;
>>
>> (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or
>>
>> (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;
>
> (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and
>
> (3) the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

Thus the statute sets forth three separate methods by which the Government may prove that a defendant operates an "unlicensed money transmitting business":

> (1) failing to obtain a state license where such a license is necessary; or
>
> (2) failing to comply with separate federal registration requirements; or

4

    (3)    transmitting funds in support of or as a result of criminal activity.

This case involves the second, proscribed by 18 U.S.C. § 1960(b)(1)(B).

### c. 31 U.S.C. § 5330

Section 5330 of Title 31, the requirements of which are incorporated by reference in 18 U.S.C. § 1960(b)(1)(B), defines "money transferring business" and the applicable registration requirements:

> (a) Registration with Secretary of the Treasury required.
>
>> (1) Any person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury not later than the end of the 180-day period beginning on the later of—
>>
>>> (A) the date of enactment of the Money Laundering Suppression Act of 1994; or
>>>
>>> (B) the date on which the business is established.
>
> . . .
>
> (d) Definitions. For purposes of this section, the following definitions shall apply:
>
>> (1) Money transmitting business.--The term "money transmitting business" means any business other than the United States Postal Service which--
>>
>>> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;
>>>
>>> (B) is required to file reports under section 5313; and
>>>
>>> (C) is not a depository institution (as defined in section 5313(g)).
>>
>> (2) Money transmitting service.--The term "money transmitting service" includes accepting currency or funds

5

>denominated in the currency of any country and transmitting the currency or funds, or the value of the currency or funds, by any means through a financial agency or institution, a Federal reserve bank or other facility of the Board of Governors of the Federal Reserve System, or an electronic funds transfer network.

31 U.S.C. § 5330.

### d. Analysis

The Indictment charges a violation of Section 1960(b)(1)(B)—failure to comply with separate federal registration requirements as articulated under Section 5330 of Title 31. (*See* DE 13 ¶ 2) First, Mr. Green asserts that the Indictment must be dismissed for statutory vagueness under *United States v. Davis, supra*. According to Mr. Green, 18.U.S.C. § 1960 and 31 U.S.C. § 5330 do not define "money" or "funds" in a manner so as to clearly cover virtual currencies such as Bitcoin. (DE 23-1 at 7–12) Second, Mr. Green asserts that the rule of lenity also applies and requires dismissal of the indictment (*Id.* at 13–14)

For the reasons stated below, Mr. Green's motion to dismiss is **denied**.

#### 1. *U.S. v. Davis*

Mr. Green asserts that the Supreme Court's decision in *Davis* changed the statutory-interpretation landscape. Under the *Davis* approach, he says, the Court must set aside prior contrary lower-court case law and hold that Section 1960 is impermissibly vague. 139 S. Ct 2319 (2019). I disagree. Money changes everything; *Davis* did not.

The subject matter of *Davis* has nothing to do with 18 U.S.C. § 1960, the money transmitting business, or the definition of "money" or "funds." In *Davis*, the Supreme Court considered whether the residual clause of 18 U.S.C. § 924(c), a firearms statute, was unconstitutionally vague. Section 924(c) prescribes "heightened criminal penalties for using or carrying a firearm 'during and in relation to,' or possessing a firearm 'in furtherance of,' any federal 'crime of violence or drug trafficking crime.' § 924(c)(1)(A)." *Id.* at 2324. Section 924(c)(3) defines "crime of violence" as an offense that amounts to a

6

felony and, either, "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." Prong (B) is the so-called "residual clause" discussed in *Davis*.

Ultimately, the Court determined that the residual clause was impermissibly ambiguous. The Court compared § 924(c)'s residual clause to the residual clauses found in two statutes—the Armed Career Criminal Act and 18 U.S.C. § 16—that it had recently found unconstitutional, and found it to be indistinguishable from them. *Davis*, 139 S. Ct at 2325–26. All three clauses required judges

> to use a form of what we've called the categorical approach to determine whether an offense qualified as a violent felony. Following the categorical approach, judges had to disregard how the defendant actually committed his crime. Instead, they were required to imagine the idealized ordinary case of the defendant's crime and then guess whether a serious potential risk of physical injury to another would attend its commission.

*Id.* at 2326 (internal quotation marks and citations omitted). To relegate the risk of violence to case-by-case estimation, the Court held, was unconstitutional as it resulted in arbitrary and unpredictable judgments. (*Id.*)

In so holding, *Davis* does not announce a new Constitutional principle for interpreting criminal statutes. Rather, *Davis* applies longstanding Supreme Court doctrine that only Congress has the authority to criminalize acts, and then only through clear statutory pronouncements:

> Our doctrine prohibiting the enforcement of vague laws rests on the twin constitutional pillars of due process and separation of powers. *See Dimaya*, 584 U.S., at ––– – –––, 138 S.Ct., at 1212–1213 (plurality opinion); *id.*, at ––– – –––, 138 S.Ct., at 1224–1228 (GORSUCH, J., concurring in part and concurring in judgment). Vague laws contravene the "first essential of due process of law" that statutes must give people "of common intelligence" fair notice of what the law demands of them. *Connally v. General Constr. Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *see Collins v. Kentucky*, 234 U.S. 634, 638, 34 S.Ct.

7

> 924, 58 L.Ed. 1510 (1914). Vague laws also undermine the Constitution's separation of powers and the democratic self-governance it aims to protect. Only the people's elected representatives in the legislature are authorized to "make an act a crime." *United States v. Hudson*, 7 Cranch 32, 34, 11 U.S. 32, 3 L.Ed. 259 (1812). Vague statutes threaten to hand responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide. *See Kolender v. Lawson*, 461 U.S. 352, 357–358, and n. 7, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89–91, 41 S.Ct. 298, 65 L.Ed. 516 (1921); *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1876).

*Davis*, 139 S. Ct. at 2325. Notably, *Davis*, does not alter the method or content of a courts' analysis of statutory vagueness. Thus, "[w]hen called upon to interpret a statute, courts must always begin with the statute's plain language." *Hewett v. Willingboro Bd. of Educ.*, 421 F. Supp. 2d 814, 817 (D.N.J. 2006) (internal citations and quotations omitted). "As usual, our job is to interpret the words consistent with their 'ordinary meaning ... at the time Congress enacted the statute.'" *United States v. Johnman*, No. 18-2048, 2020 WL 425399, at *3 (3d Cir. Jan. 28, 2020) (citing *Wis. Cent. Ltd. v. United States*, — U.S. —, 138 S. Ct. 2067, 2070, 201 L.Ed.2d 490 (2018)). "[I]n addition to considering the statutory language itself, we may also engage in a studied examination of the statutory context. If we ultimately determine that a provision is clear and unambiguous, [we] must simply apply it. However, if we find that a provision is ambiguous, we then turn to pre-Code practice and legislative history to find meaning." *In re Denby-Peterson*, 941 F.3d 115, 124 (3d Cir. 2019) (internal citations and quotations omitted).

I do not mean to imply that the general approach of *Davis* does not apply; of course it does. What I reject is the apparent implication that *Davis* wrought some sort of fundamental change in the interpretation of criminal statutes. So, applying well-worn principles as announced in *Davis* and many prior cases, I turn to 31 U.S.C. § 5330 and 18 U.S.C. § 1960 to determine

8

whether the ordinary and plain language of these statutes prohibits the conduct alleged in the Indictment with sufficient clarity.

### 2. Section 5330's definition of "money"

As noted above, 18 U.S.C. § 1960 criminalizes the operation of a money transmitting business that is not registered as required. It incorporates the requirements of 31 U.S.C. § 5330 as to who must register as a money transmitting business. Section 5330 of Title 31 applies to a business exchanging ordinary fiat currency for Bitcoin.

Section 5330 permits the Treasury Department to regulate "money transmitting business[es]." Money is defined by reference to the word "funds":

> The term "money transmitting business" means any business other than the United States Postal Service which--
>
> (A) provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who **engages as a business in the transmission of funds** . . .

Id. § 5330(d)(1) (**emphasis** added). As discussed in more detail below, the dictionary meaning of "funds" very broadly covers "available pecuniary resources" or "money," broadly defined as "something generally accepted as a medium of exchange, a measure of value, or a means of payment." See United States v. Murgio, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016) (citing Webster's Third New International Dictionary 921 (2002)).

Setting aside the language of 18 U.S.C. § 1960, see infra, Section 5330 contains its own guidance: "[M]oney transmitting or remittance services" is broadly defined under § 5330 to encompass any business that engages in "**the acceptance of currency**, funds, or other value that substituted for currency from one person **and the transmission of currency, funds, or other value that substituted for currency** to another location or person by any means." 31 U.S.C. § 5330 (**emphasis** added). If Section 5330 were intended to apply

9

solely to fiat money, or currency, there would have been no need to list "funds, or other value that substituted for currency."

I consider also the nature of the transactions covered by Section 5330. By its plain meaning, Section 5330 applies to transactions where, as here, "currency" has been accepted and then exchanged or transmitted in the form of a value that is "substituted for currency." Currency is defined as "[t]he coin and paper money of the United States or of any other country that is designated as legal tender and that circulates and is customarily used and accepted as a medium of exchange in the country of issuance." 31 C.F.R. § 1010.100(m). Bitcoin fits comfortably within the designation of a "value that substituted for currency" in the exchanges allegedly conducted by Mr. Green's business.

The conduct alleged in the indictment falls within Section 5330's registration requirements. Mr. Green is alleged to have accepted currency from his clients that he was able to deposit into his bank accounts. (DE 13 ¶ 1.a) He then is alleged to have exchanged this money for a commensurate amount of Bitcoin—*i.e.* a form of "value that substituted for currency." (*See* DE 13) Accordingly, I find that Bitcoin qualifies as funds that are the subject of regulation of money transmitting businesses under Section 5330.

### 3. Section 1960's definition of "money"

I turn, then, to the heart of the matter: 18 U.S.C. § 1960, the criminal statute under which Mr. Green is charged. Section 1960 has its own definitional section:

> [T]he term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and

18 U.S.C. § 1960(b)(2). Section 1960 does not define "money" other than to state that it includes "funds" that have been broadly transmitted by "any and all means."

As noted above, the ordinary meaning of "funds," according to an authoritative dictionary in print when Congress passed the statute, is "available pecuniary resources." *See United States v. Murgio*, 209 F. Supp. 3d at 707 (citing Webster's Third New International Dictionary 921 (2002)). "Pecuniary" was likewise defined as "taking the form of or consisting of money," and "money" was defined as "something generally accepted as a medium of exchange, a measure of value, or a means of payment." *Id.*

Federal courts have consistently adopted these broad definitions when construing the terms "funds" and "money" under Section 1960. The following cases have, in particular, held that Bitcoin constitutes "money" or "funds" under 18 U.S.C. § 1960: *United States v. Stetkiw*, No. 18-20579, 2019 WL 417404, at *2 (E.D. Mich. Feb. 1, 2019); *United States v. Murgio*, 209 F. Supp. 3d 698, 707 (S.D.N.Y. 2016); *United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014) (for these purposes, noting that "Merriam–Webster Online defines 'funds' as 'available money' or 'an amount of something that is available for use: a supply of something.'"); *United States v. Mansy*, No. 2:15-CR-198-GZS, 2017 WL 9672554, at *1 (D. Me. May 11, 2017). Other forms of virtual currency, too, have been held to constitute "funds" under Section 1960. *See United States v. E-Gold, Ltd.*, 550 F. Supp. 2d 82, 88 (D.D.C. 2008); *United States v. Budovsky*, No. 13CR368 DLC, 2015 WL 5602853, at *9 (S.D.N.Y. Sept. 23, 2015).[4]

The reasoning of *Faiella* is emblematic of those cases holding that Bitcoin falls within the scope of 18 U.S.C. § 1960: "Bitcoin can be easily purchased in

---

[4] Similar results have been reached under other statutes. *See United States v. Ulbricht*, 31 F. Supp. 3d 540, 570 (S.D.N.Y. 2014) (holding that Bitcoin fell within the scope of 18 U.S.C. § 1956, the money laundering statute, reasoning that "Bitcoins carry value—that is their purpose and function—and act as a medium of exchange. Bitcoins may be exchanged for legal tender, be it U.S. dollars, Euros, or some other currency."); *Sec. & Exch. Comm'n v. Shavers*, No. 4:13-CV-416, 2013 WL 4028182, at *1 (E.D. Tex. Aug. 6, 2013) (reasoning, for purposes of the securities laws, "that Bitcoin can be used as money. It can be used to purchase goods or services.... [I]t can also be exchanged for conventional currencies....").

11

exchange for ordinary currency, acts as a denominator of value, and is used to conduct financial transactions." 39 F. Supp. 3d at 545.

These cases employed the usual tools of statutory interpretation. For the reasons expressed above, nothing in *Davis* impliedly overrules those cases or detracts from the force of their reasoning.[5] I therefore follow them, and hold that the language of Section 1960 encompasses Bitcoin with sufficient clarity.

### 4. Rule of Lenity

The rule of lenity provides that "when ambiguity in a criminal statute cannot be clarified by either its legislative history or inferences drawn from the overall statutory scheme, the ambiguity is resolved in favor of the defendant." *United States v. Pollen*, 978 F.2d 78, 85 (3d Cir. 1992). "To invoke the rule, we must conclude that there is a grievous ambiguity or uncertainty in the statute." *Muscarello v. United States*, 524 U.S. 125, 138–39 (1998) (internal quotation marks and citation omitted).

There is no "grievous" ambiguity here. For the reasons stated above, Section 1960 and Section 5330 do not leave courts or defendants to guess at what is meant. Rather, the application of accepted canons of statutory construction reveals that the plain language of Section 1960

---

[5] I find no ambiguity here. If I did, however, resort to the legislative history of Section 1960 would support a broad application of the statute to encompass evolving forms of "funds":

> Section 1960 was passed as an anti-money laundering statute, designed "to prevent the movement of funds in connection with drug dealing." *United States v. Bah*, 574 F.3d 106, 112 (2d Cir. 2009) (citing H.R. Rep. No. 107–250(I), at 54 (2001)). Congress was concerned that drug dealers would turn increasingly to "nonbank financial institutions" to "convert street currency into monetary instruments" in order to transmit the proceeds of their drug sales. S. Rep. 101-460, 1990 WL 201710 (1990). Section 1960 was drafted to address this "gaping hole in the money laundering deterrence effort." *Id.* Indeed, it is likely that Congress designed the statute to keep pace with such evolving threats, which is precisely why it drafted the statute to apply to any business involved in transferring "funds ... by any and all means." 18 U.S.C. § 1960(b)(2).

*Faiella*, 39 F. Supp. 3d at 545–46.

and Section 5330 applies to the transmission of "funds," a term that covers pecuniary resources including Bitcoin.

## ORDER

For the reasons set forth above,

IT IS this 10th day of February, 2020,

**ORDERED** that the defendant's motion to dismiss the Indictment (DE 22, 23) is **DENIED**.

_____
**Kevin McNulty**
**United States District Judge**